Filed 12/8/25  P. v. O'Connor CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>TERRIC O'CONNOR,<br><br>　　Defendant and Appellant. | H051978<br>(Monterey County<br>Super. Ct. No. 23CR008161) |

The Monterey County District Attorney charged defendant Terric O'Connor[1] with assault with a deadly weapon (Pen. Code,[2] § 245, subd. (a)(1); count 1) and criminal threats (§ 422, subd. (a); count 2).  O'Connor made a motion to represent himself, (*Faretta v. California* (1975) 422 U.S. 806 (*Faretta*)), which the trial court denied.  A jury subsequently found O'Connor guilty on count 2 and acquitted him of count 1.  The court suspended imposition of sentence and placed O'Connor on two years of formal probation.

---

[1] Although defendant's appellate briefs refer to him as "Terric O'Conner," the amended information referred to defendant as "Terric O'Connor" and noted two aliases, Terric Russell O'Connor and Terrance Russell Connors.  We refer to defendant by the name used in the amended information.

[2] All further unspecified statutory references are to the Penal Code.

One of the probation conditions required O'Connor to submit to a period of up to 10 days of flash incarceration if he violates the conditions of his probation.

On appeal, O'Connor contends the trial court erred in denying his *Faretta* motion. In addition, O'Connor asserts that the flash incarceration probation condition violates section 1203.35, subdivision (a)(1) because the court imposed it "without his waiver." In the alternative, O'Connor maintains his defense counsel provided ineffective assistance at sentencing by failing to object to the imposition of the flash incarceration probation condition.

For the reasons stated below, we reject O'Connor's contentions and affirm the judgment.

## I. FACTS AND PROCEDURAL BACKGROUND[3]

*A. Facts*

On October 8, 2023, Monterey Police Department Officer Amanda Arrollo was dispatched to Abrego Street where she spoke with A. Wark, who told her he had been attacked by O'Connor near Don Dahvee Park. Wark stated O'Connor had swung an axe at him several times (striking Wark in the arm once) and threatened to kill him.

*B. Procedural Background*

1. Charges; *Faretta* Motion

On October 10, 2023, the Monterey County District Attorney charged O'Connor by complaint with assaulting Wark with a deadly weapon (an axe) (§ 245, subd. (a)(1); count 1), threatening Wark (§ 422, subd. (a); count 2), and misdemeanor resisting, obstructing, or delaying Officer Arrollo in the

---

[3] We set forth the facts from the trial evidence in the light most favorable to the jury's verdict. (*People v. Luo* (2017) 16 Cal.App.5th 663, 668, fn. 2; *People v. Campbell* (2020) 51 Cal.App.5th 463, 469.)

discharge of her duties (§ 148, subd. (a)(1); count 3). At arraignment, the trial court appointed counsel to represent O'Connor.

On October 20, 2023, the trial court conducted a preliminary examination of O'Connor and held him to answer. The district attorney charged O'Connor by information with the same counts that had been alleged in the complaint.

In November 2023, the trial court declared a doubt as to O'Connor's mental competency. The court suspended the proceedings and requested a referral under section 1368 for a section 1369 examination. After reviewing the section 1369 report, the court found O'Connor competent to stand trial and reinstated criminal proceedings.

On December 6, 2023, the trial court arraigned O'Connor on the information, and O'Connor entered a not guilty plea.

On January 10, 2024, O'Connor requested to represent himself and filed in the trial court a *Faretta* waiver form.

O'Connor stated on the *Faretta* waiver form that his name is "Terric O.T.F. O'Connor."[4] He crossed out the words "I understand," which appear in each of the paragraphs on the form enumerating his constitutional rights and the court's advice and recommendations. In addition, he crossed out the words "I understand" or "understand" in each of the paragraphs setting forth the risks and disadvantages of proceeding as a self-represented litigant. O'Connor wrote "X"s in the boxes on the form that asked for his initials to indicate he understood and agreed with each of the foregoing paragraphs. He did not provide his biographical information or fill out the charges and

---

[4] Although the Attorney General speculates in his respondent's brief that " 'O.T.F.' may be a social media acronym for 'only the family,' " the record does not explain its meaning. O'Connor does not provide any information about the meaning of "O.T.F." in his appellate briefing.

3

consequences section of the form. On the signature line, O'Connor wrote "O.T.F." (but did not include his first or last name) and wrote under the signature line, "under duress reservation of rights U.C.C. 1-308."[5] (Some capitalization omitted.)

That same day, the trial court conducted a hearing on O'Connor's *Faretta* motion. The court asked O'Connor if he would be ready to go to trial on the scheduled date, and O'Connor responded that he did not understand the question. When the court asked O'Connor which part of the question he did not understand, O'Connor repeated that he did not understand the question and continued by saying that he did not understand why he was "being held here against [his] will under duress and threat." The court observed O'Connor's *Faretta* waiver form included the use of "X"s where the defendant had been instructed to provide his initials, the use of the initials "O.T.F." without O'Connor's first or last name in the signature line, and the phrase "under duress reservation of rights UCC 1-308" in the signature line. (Some capitalization omitted.) O'Connor responded, "Without prejudice, yes." The court stated that it was not sure if O'Connor signed the waiver, and O'Connor responded, "Yes, I did."

The trial court further observed that O'Connor crossed out the words "I understand" in the paragraphs setting forth his constitutional rights, the dangers and disadvantages of self-representation, and the court's advisements and recommendations. The court asked O'Connor to explain what he meant by crossing out "I understand." O'Connor responded, "I comprehend. I do not understand." The court followed up by asking, "You do

---

[5] By contrast, when O'Connor subsequently completed and signed (on February 28, 2024) the prohibited persons relinquishment form, his signature appears to reflect his full name, and he initialed the form where indicated.

not understand?" O'Connor replied, "I comprehend very well." When the court asked O'Connor to explain the distinction, O'Connor responded that he did "not understand why [he's] here" and that he does "not understand out of anyone's authority outside of [his] creator."

The trial court asked whether O'Connor understood that he possessed the constitutional rights listed on the *Faretta* waiver form. O'Connor responded that he "comprehend[ed]" but did not state what he comprehended. O'Connor stated he has "multiple rights given to [him] by [his] creator, not by . . . [¶] . . . [¶] . . . this court." The court asked him "What about these rights here that are on this paper[?]" and O'Connor responded that "[t]hose are also listed in all the rights that [he has] from [his] creator. [His] rights are given to [him] by [his] creator, not by a court, not by a politician, not by a cop, not by a court or any corporation."

Referencing the constitutional rights set forth on the *Faretta* waiver form, the trial court asked O'Connor, "you are telling me that you [do] or do not understand those rights?" O'Connor responded, "I comprehend. I have rights." The court asked O'Connor, "Do you understand the rights that are specifically listed on this paper?" O'Connor responded, "I comprehend I have rights." The court asked again, "Do you understand the rights you have on this paper?" O'Connor responded, "I comprehend I have rights, and I comprehend what was written on that paper."

The trial court denied O'Connor's *Faretta* motion, stating that it did "not have any knowledge that the defendant [understood] the state constitutional rights and the federal constitutional rights, and [did not] have any acknowledgment from him that he understands any of the other advisement[s] on this." O'Connor responded, "I understand I have rights. Is that what you want to hear?" The court responded, "No, I've given you more

than enough opportunity to explain whether you understand or don't understand."

On January 17, 2024, the district attorney filed an amended information. The amended information charged O'Connor with assault on Wark with a deadly weapon (an axe) (§ 245, subd. (a)(1); count 1), and criminal threats against Wark (§ 422, subd. (a); count 2). O'Connor pleaded not guilty to both counts.

2. Jury Trial; Verdict; Sentencing

A jury found O'Connor not guilty on count 1 and guilty on count 2.

The probation officer's sentencing report recommended that the trial court place O'Connor on two years of formal probation, subject to several conditions, including, as relevant here, probation condition No. 22. That condition reads, "The [d]efendant agrees to waive the right to a court hearing and accept a period of up to 10 days of flash incarceration imposed by the probation officer for any violation of the conditions of probation. If the [d]efendant does not agree to accept a recommended period of [f]lash [i]ncarceration, the probation officer is authorized to address the violation by filing a declaration of revocation with the court. ([§] 1203.35[])" (hereafter, "probation condition No. 22" or the "flash incarceration probation condition").

That same day, the trial court conducted a sentencing hearing. O'Connor's counsel did not object to the recommended probation conditions but noted that O'Connor would "probably . . . have difficulty complying" with the conditions because of O'Connor's "political and/or philosophical views" which cause him to have "difficulty dealing with authority." The court suspended imposition of sentence and placed O'Connor on formal probation for two years. The court recited the probation conditions it was imposing by referencing the numbered conditions set forth in the probation report but did

6

not orally recite each probation condition. The probation conditions included probation condition No. 22.

The trial court asked O'Connor if he understood and accepted the terms and conditions of probation. O'Connor initially responded that the court "read a whole lot of page numbers, but I don't know what it says." The court told O'Connor that the probation conditions and the corresponding numbers were "all in the copy of the probation report." The court offered to read the probation conditions out loud and suggested, in the alternative, that O'Connor's defense counsel give O'Connor counsel's copy of the probation report. O'Connor responded, "I can read very well." The court again asked O'Connor if he understood and accepted the terms and conditions of probation. O'Connor responded, "Yep."[6]

## II. DISCUSSION

On appeal, O'Connor argues the trial court erred in denying his *Faretta* motion because (1) the court did not find him to be too disruptive to exercise his right to self-representation and (2) he voluntarily, knowingly, and intelligently waived his right to counsel. O'Connor maintains that, despite his "defiance and belief that he was a 'sovereign citizen' who was not subject to the court's jurisdiction," he read and signed the *Faretta* waiver form and "repeatedly stated that he 'comprehended' the rights he was waiving."

---

[6] On March 26, 2024, O'Connor requested the deletion of probation condition Nos. 9 and 10, which, respectively, ordered him not to use alcohol or marijuana and ordered him to submit to a field sobriety test at any time. His application for modification of probation did not mention the flash incarceration probation condition. On May 1, 2024, the trial court conducted a hearing on the request for modification of probation conditions and modified two conditions to delete the references to " 'alcohol' " and " 'marijuana.' " The court stated that all other terms and conditions of probation remained in effect.

7

O'Connor asserts with respect to the flash incarceration probation condition that the trial court erred in imposing this condition because it did so without obtaining a waiver from O'Connor, in violation of section 1203.35, subdivision (a)(1). In the alternative, he contends his defense counsel provided ineffective assistance in failing to object to the imposition of this probation condition.

The Attorney General argues O'Connor's answers to and annotation of the *Faretta* waiver form, combined with his statements during the *Faretta* hearing, indicated that his waiver of counsel was not unequivocal, knowing, or voluntary. The Attorney General contends that O'Connor forfeited his right to appeal the flash incarceration probation condition by failing to timely object to it. He further contends that O'Connor's ineffective assistance of counsel argument fails because O'Connor accepted the probation conditions and therefore waived his right to a preincarceration hearing in accordance with section 1203.35, subdivision (a)(1).

*A. Faretta Motion*

1. <u>Legal Principles and Standard of Review</u>

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to represent themselves if the defendant knowingly and intelligently elects to relinquish his or her right to counsel and "many of the traditional benefits associated with" that right. (*Faretta, supra*, 422 U.S. at p. 835; *People v. Marshall* (1997) 15 Cal.4th 1, 20 (*Marshall*).)

" 'A trial court must grant a defendant's request for self-representation if three conditions are met. First, the defendant must be mentally competent, and must make his request knowingly and intelligently, having been apprised of the dangers of self-representation. [Citations.] Second, he

must make his request unequivocally. [Citations.] Third, he must make his request within a reasonable time before trial.' " (*People v. Stanley* (2006) 39 Cal.4th 913, 931–932 (*Stanley*); *Faretta*, *supra*, 422 U.S. at p. 835.)

We review de novo whether the defendant's invocation of the right to self-representation and waiver of the right to counsel were knowing, intelligent, and unequivocal. (*People v. Orosco* (2022) 82 Cal.App.5th 348, 358; *People v. Miranda* (2015) 236 Cal.App.4th 978, 984 (*Miranda*); *People v. Best* (2020) 49 Cal.App.5th 747, 762, fn. 6 (*Best*).) In doing so, we must "review the entire record—including proceedings after the purported invocation of the right of self-representation." (*Marshall*, *supra*, 15 Cal.4th at p. 24; *Miranda*, at p. 984.) We "must indulge every reasonable inference against waiver of the right to counsel." (*Marshall*, at p. 20; *Stanley*, *supra*, 39 Cal.4th at p. 933; *People v. Ruffin* (2017) 12 Cal.App.5th 536, 545.)

"Erroneous denial of a *Faretta* motion is reversible per se." (*People v. Dent* (2003) 30 Cal.4th 213, 217; *Best*, *supra*, 49 Cal.App.5th at p. 756.)

2. <u>Analysis</u>

The parties do not dispute O'Connor's competence or the timeliness of his *Faretta* motion. The issue on appeal is whether O'Connor made his self-representation request knowingly, intelligently, and unequivocally.

"A knowing and intelligent waiver of the right to counsel is required before a criminal defendant is allowed to represent himself. [Citation.] The defendant should be made aware of the dangers and disadvantages of self-representation so the record shows he is making an informed choice with his eyes wide open. [Citation.] The purpose of this requirement is to determine whether the defendant in fact understands the significance and consequences of his decision and whether that decision is voluntary." (*Miranda*, *supra*, 236 Cal.App.4th at p. 984.) In other words, "the defendant must 'actually

9

. . . understand the significance and consequences' of the decision, and the decision must be 'uncoerced.' " (*People v. Stewart* (2004) 33 Cal.4th 425, 513; see also *Best*, *supra*, 49 Cal.App.5th at pp. 759–760; *People v. Silfa* (2001) 88 Cal.App.4th 1311, 1323 (*Silfa*).)

O'Connor maintains that, regardless of whether he completed the *Faretta* form " 'properly' or used magic words," he "repeatedly stated that he 'comprehended' the rights he was waiving," and the trial court erred by denying his *Faretta* motion.

We are not persuaded. O'Connor struck out the words "I understand" or "understand" from each of the constitutional rights, dangers and disadvantages of self-representation, and court advisements and recommendations enumerated on the *Faretta* waiver form. While "[t]he advisements in the form . . . may not be used to disqualify individuals who do not understand each nuance of the complex subject matter presented" (*Silfa*, *supra*, 88 Cal.App.4th at p. 1322), we nevertheless must review "the entire record to determine whether the defendant knowingly and intelligently waived the right to counsel." (*People v. Burgener* (2009) 46 Cal.4th 231, 241.)

The trial court's questions regarding O'Connor's *Faretta* waiver form did not challenge O'Connor's " 'technical legal knowledge.' " (*Silfa*, *supra*, 88 Cal.App.4th at p. 1323, quoting *Faretta*, *supra*, 422 U.S. at p. 836.) Rather, the court referred to O'Connor's responses on the form as part of its inquiry into whether O'Connor understood the risks of self-representation. The court also focused on whether O'Connor understood the rights he would be waiving and, therefore, whether he was knowingly and intelligently waiving those rights.

The trial court asked O'Connor why he had crossed out the words "I understand" in the paragraphs setting forth his constitutional rights and the

10

advisements and warnings regarding self-representation. O'Connor replied, "I comprehend. I do not understand." Asked by the court to clarify the distinction between comprehension and understanding, O'Connor responded that, although he "comprehend[ed]" and "comprehend[ed] very well," he did "not understand" why he was before the court and did "not understand" the authority of the court, politicians, the police, corporations, and any other person or entity. When the court asked specifically if O'Connor understood that he has the rights listed on the *Faretta* waiver form, O'Connor responded, "I comprehend I have rights, and I comprehend what was written on that paper."

The trial court directly asked O'Connor three times whether he understood the constitutional rights on the form. O'Connor attested only to being able to read the form and to having rights. At no point did O'Connor state that he understood the rights on the form. (Contra, *Best*, *supra*, 49 Cal.App.5th at pp. 752–753 ["The court . . . asked defendant whether she understood [the enumerated risks of self-representation]. Defendant indicated she understood each of these things."]; *id.* at p. 753 [When "asked if she understood" her rights, defendant "answered, 'Yes, I do.' "].) To the contrary, O'Connor deliberately crossed out the phrase "I understand" accompanying each of the enumerated constitutional rights on the form. Taken together, O'Connor's written annotation of the form and his responses to the court gave no assurance that O'Connor understood his constitutional rights.

In addition, O'Connor wrote under the initials "O.T.F." on the signature line of the *Faretta* waiver form the phrase "under duress reservation of rights U.C.C. 1-308." (Some capitalization omitted.) He reiterated during the hearing that he was reserving his rights. Given O'Connor's repeated and

11

express reservation of his rights while purporting to waive his rights, we conclude O'Connor's asserted waiver was not unequivocal. (See, e.g., *Stanley*, *supra*, 39 Cal.4th at pp. 929–931, 933.)

We cannot conclude on the record before us that O'Connor knowingly and intelligently waived his constitutional rights.

O'Connor asserts "the trial court was understandably displeased by [his] defiance and belief that he was a 'sovereign citizen' who was not subject to the court's jurisdiction." He argues that his "adherence to such an ideology was not a valid basis for refusing to accept his waiver." In support of this argument, O'Connor relies on the following statement in *United States v. Neal* (9th Cir. 2015) 776 F.3d 645, 658 (*Neal*): " 'Neal clearly endorsed the "sovereign citizen" ideology. Neal's request to represent himself could not be denied solely because he adhered to such beliefs.' "

O'Connor does not cite any evidence in the record to support his contention that the trial court's denial of his *Faretta* motion was based, in whole or in part, on his adherence to "sovereign citizen" ideology. Nor does the record support his assertion. As discussed in greater detail *post*, the court determined from O'Connor's completed form and his answers to the court's questions that O'Connor did not understand the rights set forth on the form.

Moreover, *Neal* is distinguishable on its facts. The Ninth Circuit Court of Appeals concluded Neal's *Faretta* waiver was knowing and intelligent because "Neal consistently assured the court that he understood what he was being told" (*Neal, supra*, 776 F.3d at p. 658) and "assured the court . . . that he understood the pitfalls of representing himself." (*Ibid*.) O'Connor expressed no similar understanding of his constitutional rights.

12

Based on our independent examination of the record, we decide O'Connor did not knowingly, intelligently, or unequivocally waive his right to counsel. The trial court did not err in denying O'Connor's motion to represent himself.

### B. *Flash Incarceration Probation Condition*

" '[F]lash incarceration' is a period of detention in a county jail due to a violation of an offender's conditions of probation or mandatory supervision. The length of the detention period may range between 1 and 10 consecutive days." (§ 1203.35, subd. (b).) "In any case in which the court grants probation . . ., the county probation department is authorized to use flash incarceration for any violation of the conditions of probation . . . if, at the time of granting probation . . ., the court obtains from the defendant a waiver to a court hearing prior to the imposition of a period of flash incarceration. Probation shall not be denied for refusal to sign the waiver." (*Id.*, subd. (a)(1).) O'Connor asserts the trial court erred by failing to secure an explicit waiver.

The Attorney General maintains that O'Connor forfeited his argument on appeal by failing to object in the trial court to the imposition of probation condition No. 22. O'Connor responds that the issue is preserved on appeal because it is an unauthorized sentence as a result of the court's failure to obtain his waiver. In support of his argument, O'Connor cites the minute order from the sentencing hearing.

We agree with the Attorney General that the unauthorized sentence exception does not apply here. As O'Connor acknowledges, the unauthorized sentence exception applies when "the errors present[] 'pure questions of law' [citation], and [are] ' "clear and correctable" independent of any factual issues presented by the record at sentencing.' " (*People v. Smith* (2001) 24 Cal.4th

13

849, 852.) Our Supreme Court has held that "claims deemed waived on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) O'Connor's argument turns on whether O'Connor waived a pre-flash incarceration court hearing during sentencing. This question is predominantly factual, and he has forfeited his argument on appeal by failing to object in the trial court. (*Id.* at p. 351.)

Even if O'Connor had not forfeited this issue on appeal, it lacks merit. During the sentencing hearing, the trial court identified the probation conditions it was imposing, including probation condition No. 22, by reference to their numbers and stated that those numbers were taken from the probation report. Probation condition No. 22, as set forth in the probation report, stated: "The [d]efendant agrees to waive the right to a court hearing and accept a period of up to 10 days of flash incarceration imposed by the probation officer for any violation of the conditions of probation. If the [d]efendant does not agree to accept a recommended period of [f]lash [i]ncarceration, the probation officer is authorized to address the violation by filing a declaration of revocation with the court. ([§] 1203.35[])." The court informed O'Connor of the source of the probation conditions and asked him if he wanted the court to read the conditions out loud or if he would like to read his counsel's copy of the probation report. O'Connor responded that he could "read very well." Although it is not clear from the record if O'Connor then read the probation conditions set forth in the probation report, when the court asked him again if he understood and accepted the probation terms and conditions, O'Connor responded in the affirmative.

The flash incarceration probation condition in the probation report contained language that the defendant agrees to waive the right to a court

14

hearing. In contrast, the sentencing hearing's minute order O'Connor relies on to support his argument only partially reflects probation condition No. 22. More specifically, it omitted the waiver language present in the version in the probation report.[7] Nevertheless, the trial court expressly stated on the record that it was imposing the probation conditions set forth in the probation report, and O'Connor personally, orally accepted the probation conditions as set forth in the probation report. Having thus obtained O'Connor's waiver, the court imposition of the flash incarceration probation condition did not violate section 1203.35, subdivision (a)(1). We discern no error in the trial court's imposition of the flash incarceration probation condition.[8]

### III. DISPOSITION

The judgment is affirmed.

---

[7] Probation condition No. 22, as set forth in the sentencing hearing minute order, reads as follows: "Accept a period of up to ten days of flash incarceration imposed by the [p]robation [o]fficer for any violation of probation. If you do not agree to accept a recommended period of flash incarceration, the [p]robation [o]fficer may file a declaration or revocation request with the court ([§] 1203.35)."

[8] In light of this conclusion, we do not reach O'Connor's argument that we should excuse on appeal his failure to object in the trial court to the condition based on ineffective assistance of counsel.

_____
Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Kulkarni, J.*

**H051978**
*People v. O'Connor*

* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.